IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THERON E.,[1]

          Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Case No. 6:25-cv-01092-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Theron E. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in May 1994, making him twenty-one years old on April 30, 2016, his alleged disability onset date. (Tr. 15, 17, 24, 64, 72, 81, 90.) Plaintiff is a high school graduate who has no past work experience. (*Id.* at 24, 48, 280.) In his applications, Plaintiff alleges disability due to paranoia, anxiety, depression, learning disability, attention deficit hyperactivity disorder ("ADHD"), sleep apnea, and "[s]ociopathic [t]endencies." (*Id.* at 64, 72, 81, 90) (bold omitted).

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on September 28, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) Plaintiff appeared and testified at an administrative hearing before the ALJ on November 15, 2023, and an impartial vocational expert ("VE") testified at a supplemental hearing held on July 10, 2024. (*Id.* at 15, 34-40, 43-60.) On July 18, 2024, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 15-25.) On April 24, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation

PAGE 3 – OPINION AND ORDER

omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-25.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2016, his alleged disability onset date. (*Id.* at 17.) At step two, the ALJ found that Plaintiff suffered from three severe impairments: "[O]besity; obstructive sleep apnea; major depressive disorder; generalized anxiety disorder; and [ADHD.]" (*Id.*) At step three, the ALJ found that Plaintiff does not suffer from an impairment that meets or equals a listing. (*Id.*)

PAGE 4 – OPINION AND ORDER

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to the following limitations: (1) Plaintiff can stand and walk up to two hours in an eight-hour workday, (2) Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes, or scaffolds, (3) Plaintiff can make "simple work-related decisions" and "understand, remember, and carry out simple instructions," (4) Plaintiff can "perform tasks that do not involve a specific production rate pace," such as "assembly-line work or an hourly production quota," (5) Plaintiff can "adjust to occasional changes in the work setting," and (6) Plaintiff can engage in "occasional interaction with the public, co-workers, and supervisors." (*Id.* at 19.) At step four, the ALJ concluded that Plaintiff has no past work experience. (*Id.* at 24.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, such as a small products assembler II, marker, and electronics worker. (*Id.* at 24-25.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ committed reversible error because he found persuasive the opinion of the consultative psychiatric examiner, Dayna Stierley, Psy.D. ("Dr. Stierley"), yet formulated an RFC (and VE hypothetical) that failed to capture the marked limitation that she identified. (*See* Pl.'s Reply Br. at 3 n.1, ECF No. 17, providing a succinct summary of the issue; *cf.* Pl.'s Opening Br. at 2, ECF No. 11, identifying the "dispositive" records; Def.'s Br. at 2, ECF No. 14, framing the "main issue" on appeal). Emphasizing that the ALJ effectively rejected Dr. Stierley's opinion without providing any explanation for doing so and that the VE's testimony reflects that Dr. Stierley's opinion supports finding him disabled, Plaintiff argues that the Court should reverse and remand this case for an award of benefits. (*See*

PAGE 5 – OPINION AND ORDER

Pl.'s Opening Br. at 6, arguing that the "improperly rejected opinion should be fully credited as true").

The Court agrees that the ALJ's decision is based on harmful legal error and not supported by substantial evidence but finds that unresolved issues preclude an award of benefits. The Court therefore reverses the Commissioner's decision and remands this case for further proceedings.

## I.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[2] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most

---

[2] Given that Plaintiff filed his applications on August 25, 2021 (Tr. 15), the parties agree that the revised regulations apply here. (*See* Pl.'s Opening Br. at 2, 5, emphasizing the ALJ's reliance on the supportability and consistency factors in evaluating Dr. Stierley's opinion; Def.'s Br. at 1-10, relying on the ALJ's findings regarding the persuasiveness of medical opinion evidence).

important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an ALJ concludes that "two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

### B.    Analysis

Plaintiff argues that the ALJ effectively rejected Dr. Stierley's opinion because he found her opinion persuasive but formulated an RFC and VE hypothetical that failed to account for the marked limitations that she identified. (Pl.'s Reply at 3 n.1; Pl.'s Opening Br. at 2-4.) The Court agrees.

### 1.    Dr. Stierley's Opinion

On February 24, 2024, Oregon's Disability Determination Services ("DDS") referred Plaintiff to Dr. Stierley for a consultative psychiatric evaluation. (Tr. 1187-97; *see also id.* at 1183-86, 1198, setting forth the remaining pages of Exhibit 19F at 1-16; *cf.* Ct. Tr. Index at 5, ECF No. 8-1.)

Dr. Stierley's "functional assessment" and "diagnostic impressions" were based on her clinical observations and interview, review of Plaintiff's "record," and administration of the Wechsler Adult Intelligence Test–Fourth Edition ("WAIS-IV"), the Wechsler Memory Scale–Fourth Edition ("WMS-IV"), and the Trail Marking Test ("TMT"). (Tr. 1187, 1192-94) (all caps omitted). Notably, DDS provided Dr. Stierley with a form that (1) addressed an individual's ability to perform various work-related mental activities, (2) defined a "[m]arked" limitation as a "serious[] limit[]" on one's ability to "[f]unction[] . . . independently, appropriately, effectively,

PAGE 8 – OPINION AND ORDER

and on a sustained basis," and (3) defined "[s]ustained basis" as the "ability to perform [the mental activity] eight hours a day for five days a week, or an equivalent work schedule." (*Id.* at 1183.)

Dr. Stierley prepared an eleven-page report and addressed questions on DDS's three-page form, using its "rating terms" like "[m]ild," "[m]oderate," and "[m]arked." (*See id.* at 1183, 1192.) Dr. Stierley opined that Plaintiff was "[m]arked[ly] impair[ed]" in his "[t]olerance to stress associated with [activities of daily living] and work activity." (*Id.* at 1192.) Furthermore, Dr. Stierley opined that Plaintiff was "[m]oderate[ly] impair[ed]" in his "[i]nterpersonal capabilities" with supervisors, coworkers, and the general public, "[m]oderate[ly] impair[ed]" in his ability to "sustain attention and perform simple repetitive tasks or persist in [a] competitive work environment," and "[m]ild[ly] impair[ed]" in his ability to "retain and follow instructions." (*Id.*)

In terms of diagnostic impressions, Dr. Stierley recounted that Plaintiff "endorsed symptoms of social communication disorder, post-traumatic stress disorder, and [ADHD.]" (*Id.* at 1193) (simplified). Dr. Stierley also explained that "[a]dditional diagnostic considerations include[d] major depressive disorder, and autism spectrum disorder [('ASD')], as [Plaintiff] endorsed many social problems aligned with an ASD diagnosis and reported a historical diagnosis." (*Id.*) Dr. Stierley also explained that she believed that Plaintiff's "social limitations" reflected more than "just low average to average" intelligence quotient ("IQ") scores. (*Id.*) (simplified).

### 2. The ALJ's Decision

The ALJ found Dr. Stierley's opinion "persuasive" and did not provide any explanation for discounting it. (Tr. 23.) As relevant here, the ALJ noted that Dr. Stierley opined that Plaintiff suffers from "[m]arked limitations" in his ability to tolerate stress "associated with limited

PAGE 9 – OPINION AND ORDER

judgment and insight, and preoccupation with self-stress tolerance" and "mak[e] complex work-related decisions and responding appropriately to usual work situations and changes in a routine work setting." (*Id.*) The ALJ explained that he found Dr. Stierley's opinions persuasive because they were "consistent with the other medical evidence" in the record and "well-supported" by her "explanations, observations [that she] made during the examination," and her "objective testing[.]" (*Id.*)

Immediately thereafter, the ALJ noted that "[c]onsistent with [Dr. Stierley's] opinion," his RFC assessment limited Plaintiff to "understand[ing], remember[ing], and carry[ing] out simple instructions," performing "tasks that do not involve a specific production rate pace" like "assembly-line work or an hourly production quota," making "simple work-related decisions," "adjust[ing] to occasional changes in the work setting," and "occasional[ly] interact[ing] with the public, co-workers, and supervisors." (*Id.*) The ALJ stated that by limiting Plaintiff to "simple work performed without significant contact with others, frequent changes, or decision making," he "avoids aggravation of mood issues or distractibility that could lead to excessive off-task behavior." (*Id.*)

### 3.    Disposition

The Court finds that the ALJ's decision is based on harmful legal error and not supported by substantial evidence in the record. For that reason, the Court reverses the Commissioner's decision.

Plaintiff's principal argument concerns Dr. Stierley's opinion that Plaintiff suffers from "marked limitations in tolerance to stress and responding *appropriately* to *usual* work situations on a *sustained* basis." (Pl.'s Opening Br. at 4.) Emphasizing that the ALJ found Dr. Stierley's opinion persuasive and offered no explanation for discounting any portion of it, Plaintiff argues that the ALJ's RFC assessment and VE hypothetical failed to account for the foregoing marked

PAGE 10 – OPINION AND ORDER

limitations, which are based on Paragraph B's fourth criteria (i.e., "B4" or "adapt or manage oneself"). (*See id.*; Pl.'s Reply Br. at 3-4 & n.3, arguing that the RFC "does not address 'B4'"); *cf.* 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Paragraph B of [nearly every] listing . . . provides the functional criteria [the agency] assess[es], in conjunction with a rating scale . . . , to evaluate how [a claimant's] mental disorder limits [his] functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are[ u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.").

"[A]n ALJ evaluates Paragraph B criteria to determine if the severity of the claimant's mental impairment meets or is medically equal to the criteria of a listed impairment." *Kimberly A. v. Kijakazi*, No. 2:20-cv-01802-SB, 2022 WL 19203, at *5 (D. Or. Jan. 3, 2022) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). In other words, "[t]he limitations identified in the Paragraph B criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps [two] and [three] of the sequential evaluation process." *Id.* (simplified); (*cf.* Tr. 19, stating the same). By contrast, in formulating a claimant's "mental RFC assessment" at subsequent steps of the sequential process, an "ALJ is required to perform a more detailed assessment by itemizing various functions contained in the broad categories found in [P]aragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [agency's] PRTF (Psychiatric Review Technique Form)." *Kimberly A.*, 2022 WL 19203, at *5 (simplified).

Given this understanding, courts have recognized that "[w]hile similar evidence may be used in both assessments of [a claimant's] mental impairments, they are distinct, and limitations assessed in the context of the [P]aragraph B assessment are not necessarily transferable to the

PAGE 11 – OPINION AND ORDER

more detailed assessment required when formulating the RFC." *Id.* (quoting *JW U.C. v. Comm'r of Soc. Sec.*, No. 2:19-cv-00090, 2019 WL 3451515, at *2 (W.D. Wash. July 31, 2019)). Thus, "the question is not whether the ALJ's [P]aragraph B findings are consistent with the RFC, but whether the ALJ has provided an adequate explanation for the mental limitations contained in the RFC." *Id.*

As relevant here, an ALJ's "finding that an individual has 'moderate' limitations in the [P]aragraph B criteria domains does not require the ALJ to assess a specific degree of functional limitation in the RFC." *JW U.C.*, 2019 WL 3451515, at *3 (first citing *Collingswood-Bonse v. Colvin*, No. 6:13-01646-AA, 2015 WL 853063, at *5-6 (D. Or. Feb. 24, 2015); and then citing *Phillips v. Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014)); *see also Kimberley A.*, 2022 WL 19203, at *6 (reflecting that this Court previously quoted the same passage from the *JW U.C.* decision).

Further, "[a]n 'ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.'" *Martinez v. Bisignano*, No. 24-4520, 2025 WL 2364595, at *1 (9th Cir. Aug. 14, 2025) (quoting *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)); *see also Floe v. O'Malley*, No. 23-35589, 2024 WL 4601594, at *1 (9th Cir. Oct. 29, 2024) ("The ALJ found each medical opinion persuasive and appropriately translated the assessments of [the claimant's] moderate mental impairments into the [RFC.]" (citing *Rounds*, 807 F.3d at 1006)). An ALJ does not commit harmful error in formulating an RFC that is consistent with (or more restrictive than) the medical opinion evidence that he found persuasive. *See Martinez*, 2025 WL 2364595, at *1 ("[The claimant] contends that the ALJ [assigned some weight to but] failed [adequately] to incorporate [a provider's] assessed limitations into his [RFC.] . . . [This] argument fails because [the provider's] medical opinions . . . are entirely consistent with the non-

exertional limitations identified in the ALJ's RFC. An RFC that articulates a capacity 'to perform simple, routine, repetitive tasks' adequately reflects medical opinions identifying mild and moderate mental limitations." (quoting *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008))).

By contrast, if the ALJ formulates an RFC that is inconsistent with (or less restrictive than) a medical opinion that he found persuasive, then the ALJ has committed a harmful error. *See Jeffrey G. v. Kijakazi*, No. 6:23-cv-00283-MK, 2024 WL 414422, at *5 (D. Or. Feb. 5, 2024) (explaining that the Commissioner's cases were "distinguishable" because they "only applie[d] if the [ALJ's RFC] determination is consistent with the restrictions identified in the medical evidence," which was "not the case [t]here") (simplified); *see also Timothy N. v. Comm'r Soc. Sec. Admin.*, No. 3:25-cv-00994-SB, 2026 WL 1724684, at *4 (D. Or. June 15, 2026) (noting the same).

The Commissioner does not dispute that the ALJ "found Dr. Stierley's opinion persuasive in its entirety[.]" (Def.'s Br. at 5.) Unlike Plaintiff, however, the Commissioner argues that the RFC "accounted" for Dr. Stierley's opinion. (*See id.*, asserting that the ALJ "accounted for" and "reasonably translated and incorporated Dr. Stierley's opinion of marked limitation tolerating 'stress with work activity' into the [RFC]"; *but cf.* Tr. 1192, opining that Plaintiff is markedly impaired in his ability to "tolerate stress associated with [activities of daily living] and work activity") (simplified).

The Court finds the Commissioner's argument unpersuasive. The ALJ failed to provide an adequate explanation for the mental limitations contained in the RFC. *See JW U.C.*, 2019 WL 3451515, at *3 ("[T]he question is not whether the ALJ's [P]aragraph B findings are consistent with the RFC, but whether the ALJ has provided an adequate explanation for the mental

PAGE 13 – OPINION AND ORDER

limitations contained in the RFC."). The ALJ recognized that the Paragraph B criteria are "used to rate the severity of mental impairments" at steps two and three of the sequential evaluation process and are "not a[n RFC] assessment," which "requires a more detailed" evaluation of the "areas of mental functioning." (Tr. 19.) The ALJ then explained that the RFC "reflect[ed] the degree of limitation [that he had] found in the '[P]aragraph B' mental functional analysis." (*See id.* at 19, so stating and finding "marked limitation" in "adapting or managing oneself," in part because it was "consistent with" Dr. Stierley's functional assessment (citing Ex. 19F at 10, i.e., Tr. 1192)).

The Commissioner argues that the ALJ reasonably explained that his RFC aligned with Dr. Stierley's opinion because it limited Plaintiff to simple instructions, simple work-related decisions, tasks that do not involve a specific production rate pace like assembly-line work or an hourly production quota, and only occasional interactions with the public, co-workers, and supervisors and changes in work setting. (Def.'s Br. at 5-6, citing Tr. 19, 23.) The Commissioner in turn argues that the ALJ appropriately translated Dr Stierley's assessment of marked mental impairments into the RFC and that to the extent that Plaintiff advances a reasonable alternative interpretation, the Court must defer to and affirm the ALJ's decision. (*Id.* at 6-7, arguing that even if Plaintiff disagrees with the ALJ's interpretation of Dr. Stierley's opinion or the ALJ could have interpreted Dr. Stierley's opinion differently, "it is the ALJ's rational findings that should be affirmed").

The Commissioner fails adequately to address the definitions upon which Dr. Stierley based her (fully accepted) opinion. The relevant forms defined a "[m]arked" limitation as a "serious[] limit[]" on an individual's ability to "[f]unction[] . . . independently, appropriately, effectively, and on a sustained basis" and defined "[s]ustained basis" as the "ability to perform

PAGE 14 – OPINION AND ORDER

[the mental activity] eight hours a day for five days a week, or an equivalent work schedule." (Tr. 1183.) Thus, Dr. Stierley, relying on her clinical interview and observations, record review, and administration of tests, opined that Plaintiff suffers from a "seriously limited" "[t]olerance to stress associated with [full-time activities of daily living] and work activity" given his "limited judgment and insight" and general "preoccupation with using violence to defend himself if he was attacked." (*Id.* at 1192, providing an example of Plaintiff's general worries). Dr. Stierley added that Plaintiff was limited in his "mental ability to meet [his] own basic needs[.]" (*Id.* at 1193.)

The ALJ's explanation is insufficient because the Court is unable to discern how the ALJ decided that the RFC's limitations accounted for Plaintiff's seriously limited ability to tolerate stress associated with his full-time activities of daily living or work activity, or his impaired ability to meet his own basic needs, let alone an employer's. (*See id.* at 1183, 1193; *see also id.* at 19, finding that marked limitations in adapting or managing oneself aligned with Dr. Stierley's opinion and Plaintiff's "limited daily activities outside of gaming or watching videos or movies"); *cf.* 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("How do we use the [P]aragraph B criteria to evaluate your mental disorder? . . . Marked limitation [means that y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. . . . If you have difficulty using an area . . . day-to-day at home . . . , you may also have difficulty using that area to function in a work setting. . . . [Y]ou must be able to . . . adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.").

///

PAGE 15 – OPINION AND ORDER

The Court finds that the Commissioner has failed meaningfully to explain how the ALJ arrived at the RFC despite fully accepting Dr. Stierley's opinion. *See Brown-Hunter*, 806 F.3d at 492 (holding that "the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review" because without it, "a reviewing court [is] . . . unable to review [the ALJ's] reasons meaningfully without improperly 'substituting [its] conclusions for the ALJ's, or speculating as to the grounds for the ALJ's conclusions'") (simplified) (quoting *Treichler*, 775 F.3d at 1103); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (explaining that ALJs "must provide sufficient reasoning that allows [federal courts] to perform [their] own review, because 'the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based'" (quoting *Treichler*, 775 F.3d at 1102)). As a result, the Court is unable to conclude that substantial evidence supports the denial of Plaintiff's applications.

On this record, the Court finds that a remand for further proceedings, not an award of benefits, is warranted because the credit-as-true criteria are not satisfied. *See Jeffrey G.*, 2024 WL 414422, at *5 (standard). On remand, the ALJ must explain how he translated Dr. Stierley's assessment of marked limitations into the RFC and address any related conflicts and ambiguities. *Cf. Floe*, 2024 WL 4601594, at *1 ("The ALJ found each medical opinion persuasive and appropriately translated the assessments of [the claimant's] moderate mental impairments into the [RFC.]" (citing *Rounds*, 807 F.3d at 1006)); *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (explaining that an "ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it").

///

///

PAGE 16 – OPINION AND ORDER

**CONCLUSION**

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case to the agency for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 31st day of July, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 17 – OPINION AND ORDER